# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

IN RE ) 
)    **Case No. 09-03594-TLM**
**ANNA JUDENE WESTING and** )
**JOHN HENRY WESTING,** )
)    **Chapter 13**
Debtors. )
_____ )

## MEMORANDUM OF DECISION
_____

**INTRODUCTION**

Anna and John Westing ("Debtors") seek confirmation of their amended

Chapter 13 plan, Doc. No. 57. The Chapter 13 trustee, Kathleen A. McCallister,

and creditors Rentrak Corporation and Garrity, LLC, (collectively "Objectors")

assert that the Plan is not proposed in good faith. *See* § 1325(a)(3).[1] A

confirmation hearing was held on May 18, 2010, and argument presented on May

25, 2010, at which time the Court took the matter under advisement. Upon

consideration of the record, the parties' arguments, and the applicable authorities,

the Court concludes that confirmation will be denied. This Memorandum of

Decision constitutes the Court's factual findings and legal conclusions. Fed. R.

_____

[1] Unless otherwise indicated, all statutory citations are to the Bankruptcy Code, Title 11 U.S. Code §§ 101–1532, and all rule citations are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037.

Bankr. P. 9014, 7052.

**FACTS[2]**

Debtors filed a voluntary petition for Chapter 13 relief on November 16, 2009, accompanied by the requisite schedules and statement of financial affairs ("SOFA"). According to the information provided in Debtors' filings, Anna[3] is employed as a realtor for Century Golden West Realty and John works as a diesel mechanic for Idaho Concrete. At the time of filing, they also owned and operated a small video rental business, Four J's Enterprises, LLC, doing business as Premier Video ("Four J's").

In conjunction with the petition, Debtors filed a statement of current monthly income ("Form 22C"), which they subsequently amended. Debtors' amended Form 22C, Doc. No. 55, indicates Debtors' have a current monthly income of $5,300.00 and an annualized current monthly income of $63,600.00, which is above the median income for a household of two, their household size, in the State of Idaho. After consideration of expenses and deductions, totaling $6,925.77, Debtors' Form 22C shows monthly disposable income of -$1,625.77.

---

[2]   The facts are gleaned from the Court's consideration of the testimony presented and exhibits admitted at the May 18 hearing, as well as from its examination of the Debtors' filings with the Court under penalty of perjury, *see* Fed. R. Evid. 802(d). Findings based on testimony reflect the Court's evaluation of witnesses' credibility and the weight to be given their testimony even if such considerations are not highlighted in this Decision.

[3]   For clarity, the Court will refer to Debtors by their first names.

MEMORANDUM OF DECISION - 2

In contrast, Debtors' Schedules I and J show a combined average monthly income of $7,848.42 and average monthly expenses of $5,500.00, resulting in a net monthly income of $2,348.42. Debtors' income is comprised of $2,892.42 from John's employment as a diesel mechanic, $2,100.00 in rent from two rental properties, and $2,856.00 from Social Security benefits ($848.00 to Anna and $2,008.00 to John). No income is listed from Anna's employment as a realtor or from Debtors' interests in Four J's.

Debtors filed a Chapter 13 plan with their petition, proposing $100.00 monthly payments over a period of 36 months. Doc. No. 3.[4] On March 14, 2010, Debtors amended the plan to increase their monthly payments to $165.00 in order to satisfy the "best interests of creditors test" embodied in § 1325(a)(4). Doc. No. 47.[5] The Court denied confirmation of the amended plan on April 19, 2010, due to

---

[4] Generally, a debtor with an above-median income is required to propose a plan that spans at least five years, or 60 months. *See* § 1325(b)(4). In proposing a 36-month plan with $100.00 (by amendment now $165.00) monthly payments, well below Debtors' net monthly income on Schedule J but above their disposable monthly income on Form 22C, Debtors presumably rely on their interpretation of *Maney v. Kagenveama (In re Kagenveama)*, 541 F.3d 868 (9th Cir. 2008). In *Kagenveama*, the Ninth Circuit concluded that where an above median income debtor's "projected disposable income" is zero or less, as it is in this case, the "applicable commitment period" of § 1325(a)(4) is inapplicable and there is no requirement that payments occur over five years. *See id.* at 874–77. The Court notes that neither the validity of Debtors' interpretation of *Kagenveama* nor the impact of the U.S. Supreme Court's recent decision in *Hamilton v. Lanning*, __ S.Ct. __, 2010 WL 2243704 (June 7, 2010), on *Kagenveama* are before the Court at this time.

[5] Section 1325(a)(4) provides that a plan shall be confirmed if

the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that

(continued...)

MEMORANDUM OF DECISION - 3

lack of adequate service.  *See* Doc. No. 56.  On April 20, 2010, Debtors' re-filed

their amended plan without alteration, Doc. No. 57 ("Plan"), served the same, and

it is this Plan Debtors now ask the Court to confirm.

About four months after Debtors' filing, they ceased Four J's operations

and caused Four J's to file a Chapter 7 petition.  Two months later, on April 27,

2010, Debtors organized another video rental business, Premier Movie Rentals and

Transfers, LLC ("Premier Movie").  *See* Ex. 306.  Debtors did not advise Trustee

of their newly formed business.  At the hearing, Anna testified that apart from the

signage, which was removed from the old video rental store and relocated to the

new store, the equipment and inventory used in the new business (*e.g.*, DVDs and

videos, video racks, movie posters, popcorn machine, computer software,

computers) was either newly acquired or previously personally owned by Debtors.[6]

She further testified that the new business was funded with money Debtors had

been setting aside for the business, including money John had received from

transferring 8 millimeter video footage to DVD using a piece of equipment he

purchased in 2008.  Neither the equipment, which John purchased for

---

[5](...continued)
would be paid on such claim if the estate of the debtor were liquidated under chapter
7 of this title on such date.

[6]  In Schedule B, under "Office equipment, furnishings, and supplies," item 28,  Debtors
listed "Business Computers/Terminals (5)" with a value of $1,000.00; under "Machinery,
fixtures, equipment, and supplies used in business," item 29, Debtors listed "Used Rental Videos,
Racks (for rental videos), Floor Buffer" with a total value of $3,000.00.

MEMORANDUM OF DECISION - 4

approximately $2,000.00, nor the income generated from John's transfer operation

was listed in Debtors' schedules.

## DISCUSSION AND DISPOSITION

Section 1325(a)(3) requires that to confirm a Chapter 13 plan a bankruptcy

court must find that "the plan has been proposed in good faith and not by any

means forbidden by law."  If no objection to the plan is filed, the court may

determine that the plan has been proposed in good faith without receiving

evidence.  *See* Fed. R. Bankr. P. 3015(f).  If there is an objection to a debtor's

good faith, however, the court must take evidence on the issue and make a factual

determination, based on the totality of the circumstances, as to whether the plan

has been proposed in good faith.  *Goeb v. Heid (In re Goeb)*, 675 F.2d 1386, 1391

(9th Cir. 1982); *Smyrnos v. Padilla (In re Padilla)*, 213 B.R. 349, 352 (9th Cir.

BAP 1997).  Once a party raises an objection to a debtor's good faith, the debtor

bears the burden of proving good faith by a preponderance of the evidence.

*Padilla*, 213 B.R. at 352; *In re Lavilla*, 425 B.R. 572, 576, 580–81 (E.D. Cal.

2010).

"Good faith" is not statutorily defined.  The proper inquiry is whether the

debtor acted equitably in proposing the plan, taking into account the intentions of

the debtor and the particular features of the plan in light of the spirit and purposes

of Chapter 13.  *Chinichian v. Campolongo (In re Chinichian)*, 784 F.2d 1440,

MEMORANDUM OF DECISION - 5

1444 (9th Cir. 1986); *Goeb*, 675 F.2d at 1390.  A court must examine whether the

debtor has misrepresented facts in the plan, unfairly manipulated the Bankruptcy

Code, or otherwise proposed the chapter 13 plan in an inequitable manner.  *Goeb*,

675 F.2d at 1390.

> At the core of the inquiry is: Whether the debtor came to bankruptcy
> court seeking a fresh start under Chapter 13 protection with an intent
> that is consistent with the spirit and purpose of that law – rehabilitation
> through debt repayment – or with an intent contrary to its purposes –
> debt avoidance through manipulation of the Code.

*In re Paley*, 390 B.R. 53, 58 (Bankr. N.D.N.Y. 2008) (quoting *In re Edwards*,

2004 WL 316418, at *10 (Bankr. D. Vt. Feb. 13, 2004)).

In evaluating whether Debtors' have met their burden of showing good

faith under the test articulated in *Goeb*, the Court considers the totality of the

circumstances.  *In re Stitt*, 403 B.R. 694, 703 (Bankr. D. Idaho 2008).

### A.   Amount of proposed payments

Objectors contend that the amount of Debtors' proposed monthly payments

evidences a lack of good faith, given the average monthly net income reported in

Schedule J.  Debtors' proposed monthly payment of $165.00 is $2,183.42 less

than the $2,348.42 average net monthly income they have available as reported in

their Schedules I and J.  Thus, over the life of the Plan, Debtors stand to

accumulate a surplus of $78,603.12 while paying $5,940.00 into the Plan.

According to Trustee, after payment of Trustee's fees and $2,024.00 in attorney's

MEMORANDUM OF DECISION - 6

fees, Debtors' Plan would pay a dividend of approximately 1.9% to the unsecured creditors.

Debtors assert that the $2,183.42 discrepancy between the proposed monthly payment and their net monthly income is wholly attributable to the Social Security benefits they receive. They argue, correctly, that the Code precludes consideration of such Social Security benefits for purposes of computing their ability to pay under the disposable income test of § 1325(b).[7] But Debtors further contend that the benefits, and their net income as reflected on Schedules I and J, cannot be considered in a good faith analysis under § 1325(a)(3). The Court disagrees.

Although the plain language of the Code precludes inclusion of Social Security benefits in calculating "projected disposable income" under § 1325(b), it does not necessarily prohibit consideration of those benefits for purposes of determining whether a plan has been proposed in good faith. Satisfaction of § 1325(b)'s mechanical requirements does not completely insulate a debtor from a more subjective good faith analysis under § 1325(a)(3). *Stitt*, 403 B.R. at 702–03.[8] In addressing the apparent overlap between §§ 1325(a)(3) and 1325(b),

---

[7]  *See* § 101(10A) (excluding benefits received under the Social Security Act from "current monthly income," a component of "disposable income."); *In re Scholz*, 427 B.R. 864, 871 (Bankr. E.D. Cal. 2010).

[8]  The Bankruptcy Appellate Panel for the Ninth Circuit reached such a conclusion in a
(continued...)

MEMORANDUM OF DECISION - 7

this Court has adopted an "intermediate approach" under which the sufficiency of the assets devoted to a plan may be a basis for a finding of lack of good faith under § 1325(a)(3) when coupled with some sort of manipulation, subterfuge or unfair exploitation of the Code by the debtor.  *Id.* at 703.[9]

Here, Debtors have proffered a Plan that will produce a meager dividend to unsecured creditors while generating over the Plan term a considerable surplus to Debtors, premised on Debtors' assertion that the Code allows them to exclude

---

[8] (...continued)
situation that this Court feels is sufficiently analogous to be instructive.  In *Sunahara v. Burchard (In re Sunahara)*, 326 B.R. 768 (9th Cir. BAP 2005), the Panel ruled that § 1325(b)'s disposable income test was not applicable to modification of a confirmed chapter 13 plan under § 1329(b), "Period."  *Id.* at 781.  However, the Panel further held, "important components of the disposable income test are employed as part of a more general analysis of the total circumstances militating in favor of or against the approval of modification[.]"  *Id.* at 781.  This includes consideration of whether the modification is proposed in good faith.  *Id.* at 781-82.  The Panel later elaborated that any concern *Sunahara* would inject improper subjectivity was "constrained by settled law of the circuit [requiring] that good faith is to be assessed through the matrix of whether the plan proponent 'acted equitably' taking into account 'all militating factors' in a manner that equates with the 'totality' of circumstances."  *Fridley v. Forsythe (In re Fridley)*, 380 B.R. 538, 543 (9th Cir. BAP 2007) (citing *Goeb*, 675 F.3d at 1390-91).

Thus, just as a debtor's income and expenses may be considered under a good faith analysis in the context of plan modification notwithstanding a lack of incorporation of § 1325(b) into § 1329(b), a debtor's available income and expenses may be considered – along with all other relevant and probative evidence – when evaluating the "totality of circumstances" for purposes of considering a debtor's good faith in proposing a plan for confirmation.  *Stitt*, 403 B.R. at 702-03.

[9]   This is in accord with long-standing case law in this Court.  In 1981, *Matter of Prine*, 10 B.R. 87, 81 I.B.C.R. 19 (Bankr. D. Idaho 1981), held that a debtor's availment of a right granted under the Code (there the ability to discharge an embezzlement debt under the then-available "super-discharge" provisions of chapter 13) is not *per se* violative of the good faith requirement of § 1325(a)(3), but that good faith might be found lacking should evidence establish that the debtor was attempting to manipulate the statutory scheme for her own benefit at the expense of creditors.

MEMORANDUM OF DECISION - 8

Social Security benefits from current monthly income for purposes of § 1325(b).

The question of good faith having been raised, the burden is on Debtors to justify

how taking such an approach represents a good faith effort to treat creditors in an

equitable manner and without unfair manipulation of the statutory scheme. *See*

Fed. R. Bankr. P. 3015(f), 9014(d).  Debtors have not met their burden on the

instant evidentiary record.  Indeed, they have failed to show how their intent not to

contribute their Social Security benefits to covering necessary expenses and

allocate the balance of their available income to making plan payments

demonstrates good faith.[10]

### B. Nondisclosure of income and assets

Objectors further submit that Debtors' failure to list in their schedules the

transfer equipment they owned and the income generated from use of that

equipment is a relevant circumstance and factor in considering the presence or

absence of good faith.  This is particularly true, Objectors argue, since this

undisclosed income from the undisclosed equipment is what Debtors allege was

stockpiled so they could open Premium Movie so soon after shutting down Four

J's.  Objectors also contend that Debtors' failure to disclose to Trustee their

interests in the newly formed video rental business is evidence of a lack of good

---

[10]  This is not a case where, for example, a debtor has proposed contribution of some or all of the available net monthly income even though a lesser amount of plan payment would arguably suffice to meet the technical requirements of § 1325(b).

MEMORANDUM OF DECISION - 9

faith.  The Court agrees.

The Code requires that debtors file schedules listing their assets and current income, from all sources.  *See* § 521(a).  Debtors testified that they owned the transfer equipment and that John was using the equipment to generate income when they filed their petition.  Yet they did not list the equipment or the income from John's use of the equipment in their schedules.  Although Debtors suggest that the income from the transfer operation was minimal, Anna testified that the income had allowed Debtors to fund, at least in part, their new business.  Regardless, the extent of the income they received is not a proper basis for Debtors to fail to disclose either the transfer equipment or the income produced from the use of the equipment.

Similarly, Debtors failed to disclose to Trustee their interests in the new video rental business they established in April 2010.  Though acquired postpetition, Debtors' interests in Premier Movie constitute property of the estate under § 1306,[11] of which Trustee must be made aware in order to discharge her

---

[11]  Section 1306 provides:

(a) Property of the estate includes, in addition to the property specified in section 541 of this title —
  (1) all property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first; and
  (2) earnings from services performed by the debtor after the commencement of the case but before the case is closed, dismissed, or converted to a case

(continued...)

MEMORANDUM OF DECISION - 10

duties in administering the estate.  Debtors forming and running a new post-petition business for profit is clearly something Trustee would need to evaluate and monitor.[12]

Debtors have provided no persuasive justification for their failure to disclose the transfer equipment, the transfer income, and their new business.[13] Their apparent unwillingness to be completely forthcoming in their schedules and during the course of this case does not suggest good faith.  When coupled with the magnitude of the proposed Plan payments, and the extent of available monthly net income, and on the entirety of the evidence and record presented, the Court cannot conclude that Debtors met their burden under § 1325(a)(3) of showing the Plan is proposed in good faith.

**CONCLUSION**

The objections to confirmation will be sustained, and confirmation of Debtors' Plan will be denied.  Trustee shall submit an appropriate order.

---

[11] (...continued)
under chapter 7, 11, or 12 of this title, whichever occurs first.
(b) Except as provided in a confirmed plan or order confirming a plan, the debtor shall remain in possession of all property of the estate.

[12] *See also* § 521(a)(3) (directing the debtor to "cooperate with the trustee as necessary to enable the trustee to perform the trustee's duties under [Title 11]").

[13] Debtors counter the contentions about the cessation of Four J's and immediate opening of a virtually identical business by noting a difference in the rental costs of the premises on which each operated.  While this is a militating factor, it is not a complete answer.

MEMORANDUM OF DECISION - 11

DATED: July 13, 2010



TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE

MEMORANDUM OF DECISION - 12